UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DAVID ANTHONY FLORES,

        Plaintiff,

v.

UNKNOWN LEECE et al.,

        Defendants.
_____/

Case No. 2:17-cv-61

Honorable Paul L. Maloney

**<u>OPINION</u>**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Leece, Horrocks, Laitinen, Viitala, Huss, and Napel for failure to state a claim.

**Discussion**

I. **Factual allegations**

Plaintiff is presently incarcerated within the Michigan Department of Corrections (MDOC) at Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues Corrections Officer Unknown Leece, Prison Counselor Becky Horrocks, Assistant Resident Unit Supervisor Michael T. Laitinen, Assistant Resident Unit Manager Darrin Viitala, Deputy Warden of Housing Erica Huss, and Warden Robert Napel.

Plaintiff alleges that on Sunday, March 13, 2016, he was assaulted by Prisoner Robert Lee Brooks #294879. Plaintiff states that Prisoner Brooks used a weapon, which caused "superficial abrasions that needed medical attention" and left scarring on Plaintiff's body. Sometime after the assault, Defendant Leece came to Plaintiff's cell when it was time for yard and asked Plaintiff why he was wearing shower shoes. Plaintiff stated that he was not going to yard and only wanted to mail two items and return to his cell. Defendant Leece told Plaintiff that if he came out of his cell, he must go to yard, or he would receive a ticket for being out of place. Defendant Leece was aware of the fact that Plaintiff had been assaulted and had been returned from yard for his own protection. Plaintiff asked Defendant Leece if he would mail his items, but Defendant Leece refused. Plaintiff claims that this was his only opportunity to mail his items and that other officers have allowed him to mail items during yard time and return to his cell without going to yard. Plaintiff states that he is a "pre-op transgender" prisoner and that the scars he received have caused him to suffer emotional distress.

Plaintiff states that Defendant Horrocks conducted an investigation into the assault and wanted Plaintiff to "lock up for protection." Plaintiff refused protective custody because he did not believe that he should be punished for being assaulted. Plaintiff alleges that MBP is well known for locking up gay and transgender prisoners. Defendant Horrocks recommended that Plaintiff be placed in involuntary protective segregation. Defendant Laitinen went along with the recommendation.

While Plaintiff was in segregation, he had an incident with his mattress, which was in poor condition. Defendant Laitinen expected Plaintiff to continue using the mattress, stating that Plaintiff should be grateful to have a "home away from home." Plaintiff filed a grievance and Defendant Laitinen eventually told corrections officers to swap Plaintiff's mattress with another, less damaged mattress. Plaintiff put a plastic bag cover over the mattress because it was dirty, smelled liked stale / sour body odor, and the vinyl was ripped open.

Plaintiff states that Defendant Viitala failed to promptly check into complaints and to cover-up staff misconduct in response to grievances. Plaintiff contends that Defendant Huss is supposed to ensure that housing units are in compliance with MDOC regulations, but that she allows the deputy warden's staffers to do as they please so long as they do not do it in front of her. Plaintiff overheard Defendant Huss tell another prisoner that her job is easy and merely a way to pay her bills. Plaintiff alleges that Defendant Napel allows his subordinates to do as they please and fails to provide proper supervision. Plaintiff claims that Defendants' conduct has caused him permanent psychological scarring.

Plaintiff seeks damages and equitable relief.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

4

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the Court notes that Plaintiff fails to make specific factual allegations against Defendants Viitala, Huss, and Napel, other than his claim that they failed to conduct an investigation in response to his grievances or to properly supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Viitala, Huss, and Napel engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff claims that Defendants Horrocks and Laitinen violated his rights when they had him placed in protective custody against his will. Plaintiff attaches a copy of a "Request for Protection / Investigation Report," dated March 13, 2016, which states:

> Prisoner Flores #196450 . . . was involved in an altercation with another inmate while on the Level V yard. Prisoner Flores was assaulted by prisoner Brooks #294879 . . . . It was also determined that prisoner Brooks was in possession of a weapon during the assault. No significant injuries were sustained. The weapon was processed and placed in the [Michigan State Police] locker. Prisoner Flores has refused Protective Custody at this time.
>
> Additional information: After investigation prisoner Flores has been assaulted on 3/12, then again on 3/13 which involved a weapon. Prisoner sustained minor injuries.
>
> Prisoner Flores is known to holler out obscenities from his cell such as "nigger" which has caused a magnitude of conflict for prisoner Flores. However since the two assaults in the same weekend prisoner Flores is requesting to be returned to [general population] and states if it gets worse he will notify staff. I feel that LTPC [long-term protective custody] placement is a must due to the conflict he has caused himself here and other facilities. A SPON [special problem offender notice] is being issued against Brooks who assaulted Flores with a weapon.

*See* ECF No. 1-1, PageID.20. In the SCC Review and Decision section of the report, Defendant Huss noted:

> Investigation into this matter has concluded that a long term protective environment is warranted and that a conflict situation exists. However, it is clear that inmate Flores is not eligible for level IV placement at this time. Prisoner Flores will remain in level V temporary segregation pending placement at an alternate level V for SPON separation, while awaiting eligibility for level IV and return to a protective housing unit.

*Id.*

Plaintiff appears to be claiming that his placement in segregation violated his due process rights. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a

6

prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty

7

interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559-60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

In this case, Plaintiff fails to allege any facts indicating that his confinement in temporary segregation constituted an atypical and significant hardship. Therefore, Plaintiff's claims regarding this confinement are properly dismissed.

Plaintiff also appears to be claiming that the condition of his mattress violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous"

nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Plaintiff's claim regarding the condition of his mattress fails to rise to the level of an Eighth Amendment violation.

Finally, Plaintiff claims that Defendant Leece violated his rights when he refused to allow Plaintiff to mail items during yard time without also going to yard. Plaintiff does not

9

specifically allege that his mail was legal mail, but he does claim that he needed to mail it on that particular date. Plaintiff also fails to allege whether he mailed the items and went to yard, or returned to his cell. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that alleged misconduct caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Because Plaintiff fails to allege any actual injury to pending litigation, he has not stated an access to courts claim under the First Amendment.

Moreover, Plaintiff has failed to show a violation of the First Amendment for interference with outgoing non-legal mail. Generally, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, 229 F.3d 1152 (6th Cir. 2000) (citing *Gardner v. Howard*, 109 F.3d

10

427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation). Plaintiff's inability to send non-legal mail on one occasion appears to have been an isolated occurrence. Thus, Plaintiff's allegations are not sufficient to state a First Amendment claim.

Finally, assuming that Plaintiff sent out his mail and went to the yard despite his desire to return to his cell, such allegations do not rise to the level of an Eighth Amendment violation. Plaintiff fails to allege that his presence in the yard resulted in any injury to himself, or that there was any imminent danger of such an injury.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Leece, Horrocks, Laitinen, Viitala, Huss, and Napel will be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order consistent with this Opinion will be entered.


Dated: October 17, 2017                    /s/ Paul L. Maloney
                                           Paul L. Maloney
                                           United States District Judge